**The TIMKEN COMPANY, Plaintiff,**

v.

**UNITED STATES, Defendant,**

**Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A.; NSK Ltd. and NSK Corporation, Defendants–Intervenors.**

Slip Op. 94–1.
No. 91–07–00486.

United States Court of
International Trade.

Jan. 3, 1994.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., John M. Breen, Margaret E.O. Edozien, William A. Fennell and Lane S. Hurewitz, Washington, DC (Scott A. Scherff, Managing Atty., The Timken Co., Canton, OH, of counsel), for plaintiff.

Frank W. Hunger, Asst. Atty. Gen.; David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Michael S. Kane (Joan L. MacKenzie, Attorney–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, of counsel), for defendant.

Powell, Goldstein, Frazer & Murphy, Peter O. Suchman, Susan P. Strommer, Susan E. Silver, Niall P. Meagher and Elizabeth C. Hafner, Washington, DC, for defendants-intervenors Koyo Seiko Co., Ltd. and Koyo Corp. of U.S.A.

Donohue and Donohue, Joseph F. Donohue, Jr., Kathleen C. Inguaggiato and Daniel W. Dowe, New York City, for defendant-intervenor NSK Ltd. and NSK Corp.

## OPINION

TSOUCALAS, Judge:

Plaintiff, The Timken Company ("Timken"), moves pursuant to Rule 56.1 of the Rules of this Court for judgment on the agency record, challenging the Department of Commerce, International Trade Administration's ("ITA") final results in an administrative review of imports of tapered roller bearings ("TRBs") from Japan produced by Koyo Seiko Co., Ltd., Koyo Corporation of U.S.A. ("Koyo"), NSK Ltd. and NSK Corporation ("NSK"). *Tapered Roller Bearings, Four Inches or Less in Outside Diameter, and Certain Components Thereof, From Japan; Final Results of Antidumping Duty Administrative Review* ("*Final Results*"), 56 Fed.Reg. 26,054 (1991), as amended by *Tapered Roller Bearings, Four Inches or Less in Outside Diameter, and Certain Components Thereof, From Japan; Amendment to Final Results of Antidumping Finding Administrative Review* ("*Amended Final Results*"), 56 Fed.Reg. 31,113 (1991).

### Background

On September 27, 1988, the ITA initiated an administrative review of Koyo and NSK's imports of TRBs from Japan for the period from August 1, 1987 through July 31, 1988. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 53 Fed. Reg. 37,618 (1988).

On December 13, 1990, the ITA published the preliminary results of this administrative review finding a dumping margin of 54.01% for Koyo and a dumping margin of 20.34% for NSK. *Tapered Roller Bearings Four Inches or Less in Outside Diameter and Certain Components Thereof From Japan; Preliminary Results of Antidumping Duty Administrative Review*, 55 Fed.Reg. 51,308, 51,309 (1990).

On June 6, 1991, the ITA published its Final Results for this administrative review finding a 47.63% dumping margin for Koyo and a 18.63% dumping margin for NSK. *Final Results,* 56 Fed.Reg. at 26,061.

On July 9, 1991, the ITA amended the Final Results to correct a clerical error in regard to NSK's dumping margin which resulted in a final dumping margin for NSK of 18.31%. *Amended Final Results,* 56 Fed. Reg. 31,113. Timken does not challenge the ITA's correction of this clerical error in regard to NSK.

However, Timken does challenge the following actions by the ITA: (1) the ITA's failure to adequately address plaintiff's arguments regarding discrepancies between the value of U.S. sales reported by respondents and the value of suspended entries reported by the U.S. Customs Service ("Customs"); (2) the ITA's determination to offset interest expenses with interest income when calculating cost of production ("COP") and constructed value; (3) the ITA's determination not to order collection of interest on bonds posted by respondents; and (4) the ITA's allowance of an adjustment to foreign market value ("FMV") for pre-sale inland freight. *Memorandum in Support of Plaintiff's Motion for Judgment on the Agency Record ("Timken's Memorandum")* at 11–34.

### Discussion

The Court's jurisdiction over this matter is derived from 19 U.S.C. § 1516a(a)(2) (1988) and 28 U.S.C. § 1581(c) (1988).

A final determination by the ITA in an administrative proceeding will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States,* 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

### 1. *Alleged Discrepancy Between Reported Sales and Suspended Entries*

Timken presented evidence to the ITA "that the quantity of suspended entries of tapered roller bearings from Japan reported by Customs was far lower than the quantity reported by respondent Japanese producers in their public submissions." *Timken's Memorandum* at 13 (*citing* Administrative Record Public Document Numbers ("AR Pub.Doc. Nos.") 66, 103).

Timken alleges that public import statistics for the period of review show that Customs suspended $17.3 million worth of TRB imports from Japan while Koyo and NSK reported to the ITA imports worth approximately $34.3 million. Timken relied upon information supplied by the ITA for its estimate of the value of TRB imports suspended by Customs and on the public versions of Koyo and NSK's questionnaire responses for its estimate of the value of their imports. *Timken's Memorandum* at 13; *see also* AR Pub.Doc. No. 66.

ITA responded to Timken's allegation by stating:

> We continue to instruct Customs on the proper implementation of our instructions to suspend liquidation on entries of TRBs and collect a cash deposit, as appropriate. We are not aware of improperly liquidated entries for this review period.

*Final Results,* 56 Fed.Reg. at 26,055.

Timken argues that the ITA was obligated to thoroughly investigate its allegation of possible undersuspension of TRB entries as soon as Timken brought its suspicions to the ITA's attention. Timken states that "failure to collect pertinent data or to consider a relevant aspect of an issue, constitutes an abuse of discretion." *Timken's Memorandum* at 16 (*quoting Timken Co. v. United States,* 10 CIT 86, 97, 630 F.Supp. 1327, 1337–38 (1986)).

Timken also argues that, unless the alleged undersuspension is remedied, the ITA will be unable to perform its statutory duty to assess antidumping duties on "entries of the merchandise included within the determination." *Id.* at 18 (*quoting* 19 U.S.C. § 1675(a)(2) (1988)).

Finally, Timken claims that the ITA cannot delegate its responsibility to investigate and resolve this issue to Customs. Timken argues that the ITA's statutory duty to provide assessment instructions to Customs includes the duty to determine whether all entries of the subject merchandise were correctly suspended. Timken further argues that Customs' duty is merely ministerial in regard to the implementation of the ITA's suspension and assessment instructions. *Id.* at 18–20.

Defendant argues that Timken does not possess standing to raise this issue before this Court. Defendant states that in order to possess standing a plaintiff must allege an injury that can be remedied by a decision of this Court. Defendant asserts that there is no action this Court could take which would afford Timken the relief it seeks. *Defendant's Memorandum in Opposition to Plaintiff's Motion for Judgment Upon the Agency Record ("Defendant's Memorandum")* at 9–12.

Specifically, defendant maintains that the ITA is without authority to order reliquidation of entries that Customs may have already liquidated. Defendant states that "[a]lthough Commerce makes the determination that is the 'basis for the assessment of antidumping duties,' 19 U.S.C. § 1675(a), it is Customs that collects these duties. 19 C.F.R. §§ 353.15(a)(3)(ii), 353.21(a)." *Defendant's Memorandum* at 11. Defendant argues that Timken has pointed to no statutory authority which allows the ITA to order Customs to reliquidate entries, therefore, there is no relief which this Court may grant Timken. *Id.* at 11–12.

Finally, defendant claims that any undersuspension of entries would result in an undercollection only of cash deposits. As to the assessment and collection of antidumping duties on entries covered by this administrative review, defendant states that pursuant to the ITA's current practice, the amount of unliquidated entries affects the amount of antidumping duty assessed per entry but not the total amount of antidumping duty collected. Therefore, the total amount of anti-

dumping duties due under the statute will be collected. *Defendant's Memorandum* at 11 n. 9.

Defendant-intervenor NSK agrees with defendant that Timken has no remedy for any entries which may not have been suspended from liquidation because they are already liquidated and there is no statutory authority to order reliquidation. *Brief of NSK Ltd. and NSK Corporation, Defendant–Intervenors, in Opposition to Plaintiff's Motion for Judgment Upon the Agency Record ("NSK's Brief")* at 13–15.

In addition, NSK argues that nothing in the statute and regulations governing the conduct of administrative reviews by the ITA suggests that the ITA is required to investigate the status of the suspension of liquidation of entries of the subject merchandise. *Id.* at 9–12.

NSK maintains that if Timken believed that undersuspensions were occurring, its correct remedy would have been to bring an action in mandamus against Customs, the agency statutorily charged with responsibility for suspending liquidation of merchandise subject to an antidumping duty order. *Id.* at 12–13.

Defendant-intervenor Koyo argues that Timken has failed to present reliable evidence that undersuspensions have occurred because the two sets of data relied upon by Timken are not comparable. Koyo states that the Customs data referred to by Timken consists of the entered value of TRBs from Japan which in the case of Koyo is a transfer price between related companies.[1] In contrast, the U.S. sales price reported in Koyo's questionnaire response is the sale price to the first unrelated purchaser in the U.S. and includes additional costs not included in the entered value. Therefore, it is to be expected that the U.S. sales price would be substantially higher than the entered value and Timken's evidence does not show that undersuspension of TRB entries have occurred. *Defendant–Intervenor Koyo's Memorandum in Opposition to Plaintiff Timken's Motion*

---

**1.** All of Koyo's sales to the U.S. market were exporter's sale price transactions between Koyo

Seiko Co., Ltd. and its U.S. subsidiary American Koyo Corporation.

*for Judgment on the Agency Record ("Koyo's Memorandum")* at 11–12.

Koyo also argues that Timken has sued the wrong agency. Koyo states that the ITA must order suspension of liquidation when it finds evidence of sales at less than fair value during its preliminary investigation of an antidumping duty complaint. 19 U.S.C. § 1673b(d)(1) (1988). At the conclusion of an administrative review, as here, the ITA's final determination is to be the basis of the instructions it sends to Customs regarding assessment of antidumping duties. 19 U.S.C. § 1675(a); 19 C.F.R. § 353.21(a). Customs is to suspend liquidation of any entries made subject to an outstanding antidumping duty order and to assess antidumping duties per the ITA's instructions. 19 U.S.C. § 1500 (1988); 19 C.F.R. § 159.41 (1991). ITA has no responsibility for or ability to direct how Customs carries out the ITA's suspension and liquidation instructions. In this case, the ITA has correctly sent out suspension of liquidation and assessment instructions. *Koyo's Memorandum* at 12–16.

Timken replies that it does possess standing to raise this issue because the defendant itself describes a remedy that this Court could order the ITA to implement when the defendant describes the ITA's current assessment practice. Timken asserts that this practice is new and Timken was unaware that it was in effect at the time of the underlying administrative proceeding. Therefore, Timken requests that this Court remand this issue to the ITA to allow the ITA to adopt and implement its new policy in this case. *Reply Memorandum of The Timken Company in Support of Motion for Judgment on the Agency Record ("Timken's Reply")* at 5–8.

■ It is clear under the statutory scheme devised by Congress, that the ITA's responsibility to instruct Customs pursuant to the ITA's authority to conduct administrative reviews is twofold. First, when the ITA makes a preliminary determination that merchandise is being sold at less-than-fair-value, the ITA is to *issue instructions to Customs* to suspend liquidation of all entries of the subject merchandise imported from the country under investigation after the date of the pre-liminary determination. 19 U.S.C. § 1673b(d)(1). No one contests that the ITA did in fact issue instructions to Customs to suspend liquidation of TRBs from Japan in this case.

Second, after the conclusion of an administrative review, the ITA's final determination is the basis for Customs' liquidation of the suspended entries of the subject merchandise. 19 U.S.C. § 1675(a)(2). Pursuant to its regulations, at the conclusion of an administrative review the ITA is to *"instruct* the Customs Service to assess antidumping duties on the merchandise described in paragraph (b) of this section and to collect a cash deposit of estimated antidumping duties on future entries." 19 C.F.R. § 353.22(c)(10) (1991) (emphasis added).

■ Customs alone is granted the power to liquidate entries of merchandise. 19 U.S.C. § 1500. Customs also has sole power to suspend liquidation pursuant to statute and regulations when notified of an outstanding antidumping duty order on imports of merchandise. 19 U.S.C. § 1504 (1988); 19 C.F.R. §§ 159.41, 159.58 (1991). Therefore, once the ITA has issued suspension instructions to Customs, it is Customs' responsibility and duty to implement those instructions.

■ This Court finds that the ITA has fulfilled its statutory duty. There is no requirement in the statute or regulations that the ITA monitor Customs' implementation of the ITA's suspension or liquidation instructions. If Timken believed that Customs was failing to perform its statutory duty by not suspending entries of merchandise which were subject to the TRB antidumping duty order, Timken should have brought an action in mandamus to compel Customs to perform its duty.

■ In addition, this Court can give Timken no remedy as to any entries which may have been incorrectly liquidated by Customs since all liquidations are final ninety days after liquidation. 19 U.S.C. § 1514 (1988).

However, since suspension of entries of the subject merchandise at issue in this case currently continues pursuant to the prelimi-

nary injunction entered by this Court,[2] and since this Court can order liquidation of these entries pursuant to 19 U.S.C. § 1516a(e) (1988), this Court orders the ITA to apply its current administrative practice for assessments and collect the full amount of antidumping duties calculated to be due in this case by assessing these duties over all suspended entries of the subject merchandise. *See Defendant's Memorandum* at 11 n. 9.

## 2. Interest Income Offset

In its Final Results, the ITA allowed Koyo and NSK to offset interest expenses with interest income when calculating cost of production and constructed value. *Final Results*, 56 Fed.Reg. at 26,056.

Timken challenges the ITA's allowance of this adjustment for interest income when calculating interest expenses for purposes of calculating COP and constructed value. Specifically, Timken argues that the ITA ignored its own administrative precedents by not requiring respondents to show that any interest income was directly related to production of the subject merchandise and the current operations of the firm. *Timken's Memorandum* at 22–24. In addition, Timken alleges that respondents failed to adequately describe the source of the interest income as required by the ITA in previous administrative proceedings. *Id.* at 22–23.

Timken also alleges that the ITA's decision to decrease interest expenses by the amount of interest income in calculating COP and constructed value is not in accordance with law. Timken maintains that the plain language of 19 U.S.C. § 1677b(e) (1988),[3] requires that all costs of production, including interest expenses, be included in the calculation of constructed value. Timken claims that the only offset allowed by the statute is to account for home market internal taxes rebated upon export. Therefore, Timken argues there is no statutory authority for offsetting interest expenses with interest income, especially if the interest income cannot be directly tied to production of the subject merchandise. *Timken's Memorandum* at 24–26. Timken seems to be arguing by extension that the same constraints apply to the calculation of cost of production.

Defendant and Koyo argue that Timken has misstated the ITA's test for allowing an interest income offset to interest expenses. Defendant states that the correct test is not whether the interest income is directly related to production of the subject merchandise but whether the interest income is related to the ordinary operations of the company. Defendant maintains that this court affirmed the ITA's test on this issue in *Floral Trade Council v. United States*, 15 CIT 497, 508–09, 775 F.Supp. 1492, 1504 (1991), and *Asociacion Colombiana de Exportadores v. United States*, 13 CIT 13, 18, 704 F.Supp. 1114, 1119 (1989). *Defendant's Memorandum* at 21–22; *Koyo's Memorandum* at 17–19.

Defendant claims that the ITA correctly found that Koyo and NSK demonstrated a direct relationship between the interest income and their general operations. *Defendant's Memorandum* at 23 (*citing* AR Confidential Doc. Nos. 4, 5). Koyo and NSK

---

**2.** Order granting Preliminary Injunction, Court No. 91–07–00486 (Aug. 9, 1991).

**3.** 19 U.S.C. § 1677b(e) states in relevant part:

(e) **Constructed value**

(1) **Determination**

For the purposes of this subtitle, the constructed value of imported merchandise shall be the sum of—

(A) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise ...;

(B) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise under consideration ..., except that—

(i) the amount for general expenses shall not be less than 10 percent of the cost as defined in subparagraph (A), and

(ii) the amount for profit shall not be less than 8 percent of the sum of such general expenses and cost; and

(C) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise under consideration in condition, packed ready for shipment to the United States.

agree with defendant's argument that the ITA correctly determined that Koyo and NSK met the test. *Koyo's Memorandum* at 19–20; *NSK's Brief* at 16–18.

In regard to Timken's argument that 19 U.S.C. § 1677b(e) does not allow for an adjustment for interest income in the calculation of COP or constructed value, NSK points out that 19 U.S.C. § 1677b(e) defines only constructed value which is used in situations where home market sales of the subject merchandise are either nonexistent or too small to be used to calculate foreign market value. Cost of production, on the other hand, is defined only by regulation, 19 C.F.R. § 353.51(c) (1991),[4] and deals with determining whether a home market model is being sold at less than its cost of production. *NSK's Brief* at 18–20; *see* 19 U.S.C. § 1677b(b) (1988). Therefore, Timken's argument that the statute does not allow for offsets for interest income in the calculation of COP is incorrect because the statute Timken argues about does not define COP. *NSK's Brief* at 20. In addition, NSK alleges that Timken's argument is internally inconsistent because even Timken recognizes that some offsets in the calculation of constructed value, such as a deduction from the cost of manufacture for revenues resulting from the sale of scrap produced in the production process, are allowed. *Id.* at 21 (*citing Timken's Brief* at 25–26).

NSK argues that it has shown that its claimed interest income offset is related to the ordinary operation of NSK, production of antifriction bearings including the subject TRBs. *NSK's Brief* at 16–18.

In its reply brief, Timken argues that 19 U.S.C. § 1677b(e) requires all costs of production, including interest expenses, be included in the calculation of constructed value and that the statute allows for no offsets except for a reduction for internal taxes rebated upon export. Timken then proceeds to apply this argument to COP. *Timken's Reply* at 17–18. Timken claims that the requirements of 19 U.S.C. § 1677b(e) apply to

COP because both the statute and 19 C.F.R. § 353.51(c) require that all costs used in calculating constructed value and COP be tied to the merchandise under investigation. *Id.* at 18 n. 2. Timken states that the ITA specifically, and correctly, requested Koyo and NSK to explain how interest income related to the production of TRBs and that they were unable to do so. *Id.* at 19–22.

It seems to this Court that Timken is trying to equate COP with constructed value. However, constructed value and COP are two very different concepts used for very different purposes. Trying to draw analogies between the two concepts is dangerous at best. Therefore, this Court will address Timken's arguments in regard to COP and constructed value separately.

■ First, in regard to the calculation of COP, Timken has misstated the ITA's standard for allowing interest expenses to be offset by interest income. In the final results of an administrative review of an antidumping duty order on cellular mobile telephones from Japan, the ITA published the following explanation of its practice in regard to offsetting interest expenses with interest income in calculating COP:

*Comment 16:* Motorola questions whether the interest income allowed as an offset to MELCO's interest expense was attributable to CMT operations.

*Department's Position:* The interest income claimed by MELCO as an offset to interest expense was for interest earned on compensatory balances. The Department does not require that such interest be exclusively related to the merchandise subject to review. *Short-term interest income, such as that earned on compensatory balances, which is related to the ordinary course of business, is accepted as an offset to short-term interest expense.* (See *Final Results of Administrative Review: Titanium Sponge from Japan,* (52 FR 4799, February 17, 1988.))

---

**4.** 19 C.F.R. § 353.51(c) states:

(c) *Calculation of cost of production.* The Secretary will calculate the cost of production based on the cost of materials, fabrication, and

general expenses, but excluding profit, incurred in producing such or similar merchandise.

*Cellular Mobile Telephones and Subassemblies From Japan; Final Results of Antidumping Duty Administrative Review,* 54 Fed.Reg. 48,011, 48,016 (1989) (emphasis added); *see also Tapered Roller Bearings Four Inches ·or Less In Outside Diameter and Certain Components Thereof From Japan; Final Results of Antidumping Duty Administrative Review,* 55 Fed.Reg. 38,720, 38,723 (1990); *Final Determination of Sales at Less Than Fair Value: Certain Small Business Telephone Systems and Subassemblies Thereof From Taiwan,* 54 Fed.Reg. 42,- 543, 42,545 (1989); *Final Determination of Sales at Less Than Fair Value: Certain Fresh Cut Flowers From Colombia,* 52 Fed. Reg. 6,842, 6,848 (1987); *Erasable Programmable Read Only Memories (EP-ROMs) From Japan; Final Determination of Sales at Less Than Fair Value,* 51 Fed. Reg. 39,680, 39,684 (1986); *but see Tapered Roller Bearings, Four Inches or Less In Outside Diameter, and Certain Components Thereof, From Japan; Final Results of Antidumping Duty Administrative Review,* 56 Fed.Reg. 65,228, 65,238 (1991) (ITA stated interest income must be related to production of subject merchandise in order to offset interest expense in calculating COP). Therefore, this Court finds that the ITA's standard practice has been to require respondents to show that interest income is related to the general operations of the firm in order for that interest income to be used to offset interest expenses in the calculation of COP.

This standard has been upheld by this court. *Floral Trade Council,* 15 CIT at 508–09, 775 F.Supp. at 1504; *Asociacion Colombiana de Exportadores v. United States,* 13 CIT 526, 533, 717 F.Supp. 834, 840–41 (1989); *Asociacion Colombiana,* 13 CIT at 18, 704 F.Supp. at 1119; *cf. Timken Co. v. United States,* 16 CIT ——, ——–——, 809 F.Supp. 121, 124–25 (1992).

The question before this Court then becomes whether Koyo and NSK have shown that their reported short-term interest income related to the general operations of their firms.

Koyo explained its interest income offset in its questionnaire response as follows:

The direct relation between the manufacture of products under the scope of administrative review and any interest income cannot be explained clearly.

Koyo operates the manufacture and sales of anti-friction bearings and other products using funds sourced from [ ]. Through the course of business, Koyo invests money which is free temporarily until it will be used for the business of bearings.

Therefore the funds invested come from loans and account receivables.

Even loans cannot be directly related to the business of bearings and the same for the fund invested.

Generally speaking, based on the fact that the funds invested come from [ ] and have an indirect relation to the business of bearings, interest income on short time-deposits should be recognized as a part of our overall bearing business.

AR Pub.Doc. No. 45.

NSK explained its interest income offset in a response to a deficiency letter as follows:

The interest received of [ ] yen relates to NSK's overall operations. NSK cannot identify the specific amount that relates to TRBs, so it allocated interest based on the ratio of interest received to cost of goods sold. NSK has allocated [ ] yen to the TRBs under investigation in the ratio of total home market sales of the TRBs in scope to total cost of goods sold.

AR Pub.Doc. No. 64.

This Court finds that evidence on the administrative record supports the ITA's determination that Koyo and NSK's reported short-term interest income used to offset interest expenses was related to Koyo and NSK's ordinary course of business. AR Pub. Doc. Nos. 43, 45, 64.

 As to Timken's assertion that the definitions of constructed value and COP contained in 19 U.S.C. § 1677b(e) and 19 C.F.R. § 353.51(c), respectively, preclude any offset adjustment for short-term interest income, this Court finds that neither 19 U.S.C. § 1677b(e) or 19 C.F.R. § 353.51(c) precludes the ITA from making necessary adjustments for various sources of income and expenses in

its calculations of constructed value and COP. The starting point for the ITA in its calculations of constructed value and COP is to determine as accurately as possible the true cost to the respondent of manufacturing the subject merchandise. This requires that offsets be made for such sources of income as the sale of scrap left over from the production process and various types of short-term interest income which is used in the firms' manufacturing operations. The statute then requires the ITA to add general expenses, profit and other costs associated with preparing the merchandise for shipment to the United States in its calculation of constructed value. 19 U.S.C. § 1677b(e)(1)(B)–(C). The ITA's regulations require the ITA to add only general expenses, excluding profit and the costs of preparing the merchandise for transportation to the United States, in its calculation of COP. 19 C.F.R. § 353.51(c). The two methods of calculating constructed value and COP are clearly not comparable.

Therefore, this Court affirms the ITA's offset of interest expenses with interest income in its calculation of Koyo and NSK's constructed value and COP.

### 3. *Payment of Interest on Bonds*

■ Once again, Timken argues before this Court that 19 U.S.C. § 1677g (1988)[5] requires the ITA to collect interest on under-deposits of antidumping duties when such deposits are in the form of bonds posted by an importer for entries made under antidumping duty orders in effect prior to the effective date of the Trade Agreements Act of 1979. *See* Trade Agreements Act of 1979, Pub.L. No. 96–39, §§ 101, 107, 93 Stat. 144, 193 (1979) (new antidumping duty law to enter into effect on January 1, 1980).

Timken argues that the ITA takes an impermissibly narrow view of the meaning of "amounts deposited" in 19 U.S.C. § 1677g(a). *Timken's Memorandum* at 11–12. Timken admits that this Court previously affirmed the ITA's interpretation of 19 U.S.C. § 1677g

in *Timken Co. v. United States* ("*Timken II*"), 16 CIT ——, ——–——, 809 F.Supp. 121, 122–23 (1992), and *Timken Co. v. United States* ("*Timken I*"), 15 CIT 526, 530–34, 777 F.Supp. 20, 24–27 (1991), but argues that the Court should reconsider its decisions on this issue because the entries at issue in this case all occurred after 19 U.S.C. § 1677g(a) had been in effect for some time. *Timken's Memorandum* at 12.

Defendant repeats its argument from the earlier cases that when drafting 19 U.S.C. § 1677g Congress explicitly referred to "amounts deposited" and made no mention of bonds or security. In contrast, Congress' explicit reference to "cash deposit, bond, or other security" in 19 U.S.C. §§ 1673b(d)(2), 1673d(c)(1)(B) (1988), shows that Congress was fully capable of specifying when a statutory provision was to apply to bonds. Congress did not do so for 19 U.S.C. § 1677g. *Defendant's Memorandum* at 13–18.

Koyo and NSK agree with defendant's arguments on this issue. *Koyo's Memorandum* at 8–10; *NSK's Brief* at 5–8.

While it is true that this Court's original decision on this issue in *Timken I*, 15 CIT at 530–34, 777 F.Supp. at 24–27, was limited to a situation where all the entries of the subject merchandise at issue were made prior to the enactment of the current antidumping duty law, this Court's decision in *Timken II*, 16 CIT at ——–——, 809 F.Supp. at 122–23, did cover, in part, entries made under the current law. Timken has presented no arguments which would persuade this Court to reconsider its position on this issue. Therefore, the ITA's determination not to order collection of interest on bonds posted by respondents is affirmed.

### 4. *Pre–Sale Inland Freight*

■ Timken argues that the ITA's decision to deduct all of NSK's pre-sale movement expenses from FMV is contrary to past

---

5. 19 U.S.C. § 1677g states in pertinent part:

 **§ 1677g. Interest on certain overpayments and underpayments**
 **(a) General rule**
 Interest shall be payable on overpayments and underpayments of *amounts deposited* on

merchandise entered, or withdrawn from warehouse, for consumption on and after—

. . . . .

 (2) the date of a finding under the Antidumping Act, 1921.
 (Emphasis added).

ITA practice and the decision of this court in *Silver Reed America, Inc. v. United States,* 7 CIT 23, 34–35, 581 F.Supp. 1290, 1298–99 (1984), *rev'd on other grounds sub nom. Consumer Prods. Div., SMC Corp. v. Silver Reed America, Inc.,* 753 F.2d 1033 (Fed.Cir.1985). *Timken's Memorandum* at 28–31. Timken claims that the ITA is making this adjustment pursuant to its authority to adjust FMV for differences in circumstances of sales. *See* 19 U.S.C. § 1677b(a)(4)(B) (1988); 19 C.F.R. § 353.56(a) (1991).

Specifically, Timken argues that in order for the ITA to make an adjustment to FMV for a difference in circumstance of sale, the expense at issue must be directly related to the sales being investigated. Torrington points out that the court in *Silver Reed,* 7 CIT at 34–35, 581 F.Supp. at 1298–99, upheld ITA's past practice of denying an adjustment to FMV for pre-sale expenses which could not be directly tied to sales. *Timken's Memorandum* at 28–31. Torrington argues that *Silver Reed* is directly on point because here NSK was unable to tie its pre-sale movement charges directly to the sales under investigation. *Id.*

Timken admits that this court recently upheld the ITA's new practice of deducting all pre-sale movement expenses from FMV in *Ad Hoc Comm. of AZ–NM–TX–FL Producers of Gray Portland Cement v. United States,* 16 CIT ——, —— – ——, 787 F.Supp. 208, 211–13 (1992), but argues that this case was wrongly decided. *Timken's Memorandum* at 31–34.

Defendant and NSK rely on this court's decision in *Ad Hoc Comm.,* 16 CIT at —— – ——, 787 F.Supp. at 211–13. *Defendant's Memorandum* at 25–28; *NSK's Brief* at 21–27.

The ITA's decision to compare U.S. price to home market price at a contemporaneous point in the chain of commerce is reasonable. This Court finds nothing unreasonable in the ITA's removal of pre-sale movement expenses from both U.S. and home market prices as measured from the same point in the chain of commerce. *Ad Hoc Comm.,* 16 CIT at —— – ——, 787 F.Supp. at 211–13. This method of treating pre-sale home market movement expenses has also been specifi-

cally upheld by this court in a well reasoned opinion in *Nihon Cement Co. v. United States,* 17 CIT ——, ——, Slip Op. 93–80 at 30–34, 1993 WL 185208 (May 25, 1993).

Therefore, this Court affirms the ITA's deduction of NSK's pre-sale movement expenses from FMV.

*Conclusion*

ITA's determinations not to investigate plaintiff's allegations regarding discrepancies between reported sales and suspended entries, offset interest expenses with interest income when calculating cost of production and constructed value, not to order collection of interest on bonds posted by respondents and allowance of an adjustment to foreign market value for NSK's pre-sale inland freight are affirmed. This case is dismissed.