Slip Op. 01-109

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| AMERICAN SILICON TECHNOLOGIES, ELKEM METALS COMPANY, GLOBE METALLURGICAL, INC. and SKW METALS & ALLOYS, INC., | : | |
| Plaintiffs, | : | |
| v. | : | **Before: MUSGRAVE, JUDGE** |
| UNITED STATES | : | Consolidated Court No. 97-02-00267 |
| Defendant, | : | **PUBLIC VERSION** |
| and | : | |
| COMPANHIA BRASILEIRA CARBURETO DE CALCIO, COMPANHIA FERROLIGAS MINAS GERIAS-MINASLIGAS and RIMA INDUSTRIAL S/A, | : | |
| Defendant-Intervenors. | : | |

[The Department of Commerce's remand determination for the 1994-95 administrative review of silicon metal from Brazil is sustained.]

Decided: August 27, 2001

*Baker & Botts, LLP* (*William D. Kramer, Martin Schaefermeier,* and *Clifford E. Stevens, Jr.*) for Plaintiffs.

*Stuart E. Schiffer*, Acting Assistant Attorney General, *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Reginald T. Blades, Jr.*), and Office of Chief Counsel for Import Administration, U.S. Department of Commerce (*John F. Koeppen*), of counsel, for Defendant.

*Dorsey & Whitney, LLP* (*John B. Rehm, Philippe M. Bruno,* and *Munford Page Hall, II*) for Defendant-Intervenors.

**OPINION**

In this action, plaintiffs American Silicon Technologies, Elkem Metals Company, Globe Metallurgical, Inc., and SKW Metals & Alloys, Inc. (collectively "American Silicon") and defendant-intervenors Companhia Brasileira Carbureto de Calcio ("CBCC") and Companhia Ferroligas Minas Gerais-Minasligas ("Minasligas") contest several aspects of the amended final results of the fourth administrative review of the antidumping duty order on silicon metal from Brazil, *Silicon Metal from Brazil; Final Results of Antidumping Duty Administrative Review and Determination Not to Revoke in Part*, 62 Fed. Reg. 1970 (Jan. 14, 1997) ("*Final Results*"), issued by the United States Department of Commerce, International Trade Administration ("Commerce" or "the Department"). This Court has jurisdiction pursuant to 19 U.S.C. § 1516a(a) and 28 U.S.C. § 1581(c).

*Background*

American Silicon and Minasligas previously filed motions for judgment on the agency record pursuant to CIT Rule 56.2. Based on those motions, the Court remanded the *Final Results* to Commerce for it to address eleven issues. *American Silicon Technologies v. United States*, 23 CIT __, Slip Op. 99-34 (Apr. 9, 1999). Commerce issued its remand determination, *Silicon Metal From Brazil; Final Results of Redetermination Pursuant to Court Remand* ("*Remand Results*"), on September 23, 1999. Presently before the Court are comments submitted by American Silicon, CBCC, and Minasligas contesting the following aspects of the *Remand Results*: (1) Commerce's calculation of CBCC's financial expenses on a consolidated basis with Solvay do Brasil; (2) Commerce's decision not to offset Minasligas's financial expenses with its claimed short-term interest income; and (3) Commerce's inclusion of an amount for monetary correction in Minasligas's

financial expenses but not in its financial income. For the reasons which follow, the *Remand Results* are sustained.

### *Standard of Review*

The Court shall uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), and *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)). This standard requires "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966). However, substantial evidence supporting an agency determination must be based on the whole record, and a reviewing court must take into account not only that which supports the agency's conclusion, but also "whatever in the record fairly detracts from its weight." *Melex USA, Inc. v. United States*, 19 CIT 1130, 1132, 899 F. Supp. 632, 635 (1995) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 478, 488 (1951)).

### *Discussion*

### *I. Consolidated Financial Expenses*

In its prior opinion, the Court ordered Commerce to recalculate CBCC's financial expenses on a consolidated basis with Solvay do Brasil, its immediate parent company, rather than Solvay & Cie, the ultimate parent company of both CBCC and Solvay do Brasil. In reaching this conclusion, the Court found that, contrary to Commerce's interpretation, *Accounting Research Bulletin No. 51,*

*Consolidated Financial Statements* ("ARB 51"), issued by the American Institute of Certified Public Accountants in August 1959, did not establish that majority equity ownership is *prima facie* evidence of corporate control. The Court concluded that the fact that Solvay & Cie owned 100 percent of Solvay do Brasil, which in turn owned 99.9 percent of CBCC, did not establish that Solvay & Cie actually exerted control over CBCC's operations. *See American Silicon Technologies*, Slip Op. 99-34 at 13. Moreover, the Court observed:

> Commerce notes that its practice of relying upon the consolidated financial statements of a parent corporation is based upon the fact that the controlling entity, "'because of its influential ownership interest, has the power to determine the capital structure of each member company within the group.'" Def.'s Br. at 35 (quoting *Final Determination of Sales at Less Than Fair Value: New Minivans From Japan*, 57 Fed. Reg. 21,937, 21,946 (1992)). If Commerce's primary concern is control by the parent corporation, then it seems to this Court that the immediate parent corporation, in this case, Solvay do Brasil, would be much more likely to have and exercise direct control over the subsidiary. This Court's impression is supported by record evidence which confirms financial activity between Solvay do Brasil and CBCC. In contrast, "[t]here is no evidence on the record that Solvay & Cie and Solvay do Brasil engage in similar intercompany borrowing . . . . To the contrary, the record demonstrates that Solvay & Cie's financial statements are *not* reflective of the actual cost incurred by CBCC to produce and sell silicon metal." Pls.' Br. at 35 (emphasis original).

*Id.* at 14. Therefore, the Court held that Commerce's reliance on the consolidated financial statements of Solvay & Cie was not supported by substantial evidence on the record and remanded this aspect of the *Final Results* for recalculation using the consolidated financial statements of CBCC and Solvay do Brasil. *Id.*

CBCC now argues that Commerce gave an incomplete explanation of the law and pertinent

facts in defending its use of Solvay & Cie's consolidated financial statements.[1] CBCC contends that ARB 51 was amended by *Statement of Financial Accounting Standard 94* ("SFAS 94"), issued by the Financial Accounting Standards Board in October 1987. "The basic rule established by SFAS 94 is that over 50% ownership signals control, and under the provisions of SFAS 94, full consolidation of financial statements is mandatory unless one of two conditions stipulated therein is met."[2] Defendant-Intervenors' Comments on Department of Commerce's Final Results of Redetermination ("Defendant-Intervenors' Comments") at 4 (citing SFAS ¶ 2). Thus CBCC concludes that U.S. GAAP does in fact "establish that majority ownership is *prima facie* evidence of corporate control." *Id.* at 5.

The Court agrees that U.S. GAAP, as set forth by ARB 51 and SFAS 94, generally provides for use of consolidated financial statements when a parent corporation owns more than 50 percent of a subsidiary. Nevertheless, in light of the purposes of the antidumping statutes, it is appropriate to consolidate CBCC and Solvay do Brasil, as previously ordered. In *AIMCOR v. United States*, 23 CIT ___, 69 F. Supp. 2d 1345 (1999), the court considered this exact issue. In its analysis the court stated:

---

[1] Although it was a party to this action, CBCC did not participate in briefing or oral argument on the prior cross-motions for judgment on the agency record. While the Court recognizes that the law of the case doctrine prohibits a court from changing its "decision in a prior appeal in the same case" absent exceptional circumstances, such as clear error in the earlier ruling, *see, e.g., Gould, Inc. v. United States*, 67 F.3d 925, 930 (Fed. Cir. 1995), the Court considers CBCC's argument because it calls into question the analysis of U.S. GAAP in Slip Op. 99-34. Nevertheless, since the Court concludes that its original holding was correct, based on the facts of this case, the applicability of the law of the case doctrine is not an issue.

[2] The two conditions are "when control over the subsidiary is expected to be temporary; or when control does not reside with the majority owner." Defendant-Intervenors' Comments at 4 (citing SFAS 94 ¶¶ 9, 10).

> Commerce is obligated to rely upon methodologies which "reasonably reflect the costs associated with the production and sale of the merchandise," 19 U.S.C. § 1677b(f) . . . . This court has held that Commerce is to "determine as accurately as possible the true cost to the respondent of manufacturing the subject merchandise." *Timken Co. v. United States*, 18 CIT 1, 10, 852 F. Supp. 1040, 1049 (1994).

*Id.* at 1353-54.[3] Based on the Court's earlier finding that CBCC and Solvay do Brasil engage in intercompany borrowing, but Solvay do Brasil and Solvay & Cie do not, *American Silicon Technologies*, Slip Op. 99-34 at 14, the Court concludes that its original holding was correct and that CBCC's financial expenses should be calculated on a consolidated basis with Solvay do Brasil because this more accurately reflects the cost incurred by CBCC to produce and sell silicon metal.[4] Therefore, Commerce having followed the Court's instructions, the *Remand Results* are sustained on this issue.

---

[3] Although not precedential, pursuant to Federal Circuit Rule 47.6, the Court notes that in *E.I. DuPont de Nemours & Co. v. United States*, No. 00-1100, 2001 U.S. App. LEXIS 2188 (Fed. Cir. Feb. 12, 2001), the Federal Circuit concluded that:

> An absence of intercompany borrowing within a particular group of companies shows that the group does not treat debt and equity as fungible. Thus, Commerce's reason for using consolidated financial statements does not apply to such groups.

*Id*. at *9.

[4] CBCC also highlights several facts in the administrative record that "the Department failed to identify for the Court" and which, it claims, "demonstrat[e] Solvay & Cie's control of CBCC." Defendant-Intervenor's Comments at 6. These facts include: Solvay & Cie's indirect ownership of 99.9 percent equity in CBCC; an individual holding senior management positions simultaneously in Solvay & Cie, Solvay do Brasil, and CBCC; and Solvay & Cie's consolidation of CBCC on its 1995 financial statement. *Id*. at 6-7. Solvay & Cie's indirect ownership of CBCC was noted in the Court's prior opinion, *see* Slip Op. 99-34 at 13 n.5, and none of these facts demonstrate actual control of CBCC's capital structure by Solvay & Cie.

## *II. Short-term Interest Income*

On remand, Commerce asked Minasligas to demonstrate for each of the categories of financial income reported for itself and its parent company Delp Engenharia Mecanica S.A. ("Delp") "that the reported amount of interest income is derived from short-term investments." Supplemental Questionnaire to Minasligas (July 2, 1999), Pub. Record Doc. 2, Fiche 2, Frames 4-6. Commerce's established practice is to deduct only interest income derived from short-term investments of working capital from total financial expenses. *See Remand Results* at 25. In its remand determination, Commerce concluded that Delp's category "interest received from short-term applications of working capital" constituted interest earned from short-term investments.[5] *Remand Results* at 11. Commerce disallowed all other categories of income which Minasligas claimed as interest income from short-term investments related to its operations or Delp's operations. In particular, Commerce disallowed an offset for interest received from Minasligas's certificates of bank deposit because it was "unable to determine whether these certificates are short-term in nature." *Id.* at 13.

Minasligas argues that Commerce erred in disallowing the offset for interest received from bank deposit certificates. On July 21, 1999, Minasligas submitted to Commerce a copy of its ledgers listing the allegedly short-term bank deposit certificates for both Delp and itself. Minasligas contends that the ledgers for the two companies "provide the same basic information, including the maturity date of the bank deposit certificates." Defendant-Intervenors' Comments at 9. Minasligas explains that the final column on the ledgers, which provides the date on which the investment

---

[5] Minasligas stated that "[t]his item is comprised of positive cash flows from the company operations that were invested in bank deposits with a maturity date of less than 12 months." *Remand Results* at 12 (citation omitted).

ended, was titled either *resgate* or *vencimento*, and it states that these words are used interchangeably in both Minasligas's and Delp's ledgers. *Id.* at 10. Minasligas admits that the word *vencimento* was not on the translation page accompanying the ledgers, but it explains that this word means "salary, wage; expiration, due date (of a note, debt, . . .)." *Id.* at 9 (citing *Hippocrene, Practical Dictionaries, Portuguese-English English-Portuguese,* First Hippocrene Edition 1987, Second Printing 1989, at 275). Thus Minasligas concludes that the ledgers reflect the maturity date for these investments, and Commerce acted inconsistently by allowing a short-term interest offset for Delp but not for Minasligas based on the same type of information. *Id.* at 10.

Minasligas also argues that Commerce's denial of the offset is inconsistent with its conclusions in other administrative reviews. In the 1993-1994 and 1995-1996 administrative reviews of the antidumping duty order on silicon metal from Brazil, Commerce conducted verifications and concluded that Minasligas's bank deposit certificates were, with a few exceptions, short-term investments. *See* Minasligas's Supplemental Questionnaire Response (July 16, 1999) at Ex. 4, Conf. Record Doc. 3, Fiche 8, Frames 45-50. Moreover, in the administrative review of the antidumping duty order on ferrosilicon from Brazil for 1994-1995, the same years covered by the administrative review at issue in the present action, Commerce also verified that, with a few exceptions, the bank deposit certificates were short-term investments. *See* Conf. Record Doc. 3, Fiche 8, Frames 43-44. On this basis, Minasligas concludes:

> The dates are exactly the same: 1994 and 1995. The information provided and verified by [Commerce] was exactly the same: 1994 and 1995 bank deposit certificates. Accordingly, [Commerce's] position in this remand regarding Minasligas' short-term income from the bank deposit certificates is not supported by the record and flies in the face of the other determinations made by [Commerce] officials after they verified exactly the same 1994 and 1995 information.

Defendant-Intervenors' Comments at 11.

American Silicon argues, to the contrary, that Commerce properly denied Minasligas's claimed deduction for short-term interest income, but erred in granting the deduction for Delp. American Silicon contends that the term *vencimento* appears on a minority of the column headers, while *resgate* appears on the majority. Plaintiffs' Rebuttal Comments on Department of Commerce Final Remand Results at 12-13. Although Minasligas asserts that the terms were used interchangeably, American Silicon notes that *resgate* means "ransom; discharge; redemption," indicating that this was the date the bank deposit certificates were redeemed, but not necessarily when they matured.[6] *Id.* at 13 (citing *Noronha's Legal Dictionary, English-Portuguese, Portuguese-English* 1st ed. 1993 at 465). American Silicon notes that Minasligas had the burden of proving that it was entitled to the deduction for short-term interest income, and since it failed to demonstrate that the income was derived from short-term investments, the deduction was properly denied. *See id.* at 19-20 (citing *NSK Ltd. v. United States*, 19 CIT 1013, 1030, 896 F. Supp. 1263, 1277 (1995)). Moreover, American Silicon argues that, since Minasligas submitted the same type of information in support of the deduction for Delp, as a matter of consistency, this information was insufficient support for Delp's short-term interest deduction.

The Court finds Commerce's determination supported by substantial evidence on the record. After examining the ledgers, the Court agrees with Commerce that, based on this information, the maturity term of the bank deposits is uncertain. Furthermore, Commerce contends that the verification reports from prior administrative reviews do not prove that all of Minasligas's investments were short-term. *See* Defendant's Response to the Comments Upon the Final Remand

---

[6] Minasligas stated that *resgate* means "the date on which the investment was drawn, *i.e.,* terminated," Defendant-Intervenors' Comments at 9, which is consistent with the translation proffered by American Silicon.

Determination of the Department of Commerce ("Def.'s Resp. Comments") at 6-7. Commerce notes that the verification report for the 1994-1995 review of ferrosilicon from Brazil discusses several instances where long term investments were claimed as short-term. *Id.* at 3, 7. While these discrepancies are relatively minor, Commerce concludes that they cast doubt on the reliability of the short-term interest amounts claimed by Minasligas. *Id.* at 7. Although a reasonable mind could come to the opposite conclusion on this point, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 620 (1966). Moreover, as previously stated, the burden was on Minasligas to demonstrate its entitlement to the deduction for short term interest income. Therefore, the Court sustains Commerce's denial of Minasligas's claimed deduction for income from short-term investments.

Regarding its decision to grant the short-term interest income deduction for Delp, Commerce states that the ledgers were inconclusive in this instance as well, Def.'s Resp. Comments at 6, but the verification reports revealed that Delp's claimed short-term interest income was found to be short-term, without exception, in the other administrative reviews, *Id.* at 3-4. The Court's review of the administrative record confirms Commerce's assertion. Therefore, the Court concludes that Commerce's decision to grant the offset for Delp's "interest received from short-term applications of working capital" is supported by substantial evidence and is therefore sustained.

### III. *Monetary Correction*

Minasligas also alleges that Commerce erred in its remand determination by including monetary correction in the financial expenses for Minasligas and Delp, but excluding monetary correction from their financial income. Minasligas asserts that "monetary correction is an adjustment

for inflation," and Commerce has previously recognized that under Brazilian GAAP this category is not to be included in financial expense. Defendant-Intervenor's Comments at 12. Therefore, according to Minasligas, including monetary correction in financial expenses but not financial income "arbitrarily inflated Minasligas'[s] financial expense and distorted this company's [cost of production/constructed value calculation]." *Id.*

> Commerce states that it
>
> > included monetary correction in Minasligas's financial expenses . . . because the financial expense information was taken from Minasligas's audited financial statements. Because this information was subject to audit, Commerce reasonably relied upon its contents. The claimed monetary correction to financial income, however, was not subject to audit or other independent verification. Commerce, therefore, properly required Minasligas to support its claim with record evidence.

Def.'s Resp. Comments at 9-10 (citations omitted). Commerce explains that in response to its requests for "a thorough explanation" of the monetary correction Minasligas merely "(1) stat[ed] that monetary correction is income received from short-term investments, and (2) provid[ed] various figures to represent the value of that claim." *Id.* at 9. Commerce determined that this information was insufficient for it to determine whether the monetary correction was in fact derived from short-term investments, and because its "established practice in calculating net financial expenses is to subtract from total financial expenses only interest income derived from short-term investments of working capital" Commerce denied the offset for monetary correction. *Final Results* at 25.

The Court concludes that Commerce's determination on this issue is supported by substantial evidence. Minasligas once again had the burden of proving its entitlement to the offset to financial expenses, and the Court agrees that it did not provide sufficient evidence to demonstrate that the

claimed monetary correction was related to short-term investments. Furthermore, the Court notes that Commerce followed its prior practice in taking financial expense information from audited financial statements. *See Final Results* at 25. Accordingly, the Court sustains Commerce's decision to deny the offset for monetary correction.

### *Conclusion*

For the foregoing reasons, the Department of Commerce's *Remand Results* are sustained and judgment for Defendant shall be entered in this action.

 

_____
R. KENTON MUSGRAVE, JUDGE

Dated:  August 27, 2001
        New York, New York